Rattle, J.
 

 The cjaim of the plaintiffs to the slaves in controversy, is founded on the following clause in the'Avill of Eushrocl Doggett, “ I will to my daughter, Nancy Moseley,, the tract of land whereon she now lives, supposed to be fifty-acres, also one negro girl named Harriette, and horse and cattle she has received. I estimate the whole at 430 dollars, which I intend for the said Nancy or her'issue.” The plaintiffs are the natural children of the testator’s daughter Nancy, born before- her intermarriage with the defendant, Moseley, and the slaves sued for, are the negro girl, Harriette, and her children, and the-question is, whether the above recited clause of the testator’s will admits of a construction,, which,, on the events that have happened, has vested; a title in the plaintiffs, so as to enable them to recover in this action.
 

 In the arguments of the counsel,, several views- have been presented,, as to the meaning of the testator, in giving the girl, Harriette-, to his daughter, Nancy, “ or her issue.”' The counsel for the defendant contends that his intention was to make the bequest to his- daughter absolute,, provided she survived him,
 
 or
 
 to her issue-, in- the- event of her dying in- his lifetime-, and the counsel insists, that as- she survived her father, the legacy became absolute, and vested at -once in the defendant, as her husband,
 
 jwre ma/riti.
 
 This construction seems plausible, and is certainly aided by lights derived from other parts
 
 *590
 
 of the will. In the first clause, the testator, after giving certain land, negroes and other property to his wife for life, directs, that at her death it shall be divided “ between his children then living, or their issue.” Here it is manifest, that the children of'the testator, living’ at the death of their mother, were intended to take absolute estates in the shares devised and bequeathed to them, but if either of them should be dead, leaving issue, such issue was to take what his, her and their parent would have done had he, she, or they been then living. The word “ or ” was certainly used in a disjunctive sense, and cannot be supposed to have been used in the sense of “ and.” In the second and fourth clauses of the will, the bequests to each of the testator’s daughters, Sarah and Elizabeth, is to her “ or to her issue ” as in the case of the bequest to the plaintiffs’ mother, Nancy. From the use of the same terms in the second, third and fourth clauses, which he had employed in the first clause of his will, the in Fcrence is very strong, that the testator intended the same thing in each, which was, that the issue of either, or all, of his daughters should take, only in the alternative of her or their deaths.
 

 The counsel for the plaintiffs insists strenuously this construction is inadmissible, and he contends that the disjunctive conjunction “ or,” must be taken in the conjunctive sense of
 
 ■“
 
 and,” and in support of this argument, he relies strongly upon the phraseology of the bequest to the testator’s daughter Martha Butler, in the fifth clause, which is,
 
 “
 
 for her use
 
 and
 
 Per issue or the
 
 use
 
 thereof of her issue, which is intended to be distinctly understood as relates to what I have willed to each of my daughters.” Here, it will be noticed that the word and” is used; but it is followed immediately by the expression
 
 “ or
 
 the use thereof of her issue,” which leaves it doubt■ful whether the testator meant to vary the meaning in that particular of the bequests to his daughters
 
 “
 
 or their issue” in ■■the¡previous clauses of his will. But suppose that he did, and that “ or” is to be construed “ and” throughout, the enquiry 'is at1 once suggested, whether it will help the plaintiff’s case. ■A bequest to a woman and her issue., undoubtedly gives her
 
 *591
 
 an absolute estate when she has no children or issue during the life of the testator ; but if she has children or issue -when the will is made and at the death of the testator, she and her children or issue, may take absolute estates as tenants in common, unless there is something in the will indicative of an intention that she shall take as tenant, for life, with remainder to her children or issue. See
 
 Moore
 
 v.
 
 Leach, S
 
 Jones, 88, and the cases there cited. Here, there is no expression in the will, which can be construed to give the mother a life-estate only, and the consequence is, that if the the plaintiffs can claim at all under the description of issue, they must take as tenants in common with the defendant, who, by his intermarriage with their mother, became the owner of her share of the slaves. If such be their title, they cannot maintain the present action against their co-tenant, but their remedy will be a proceeding against him for a partition of the slaves thus held in common.
 

 Wé
 
 have thus far considered the case as if the illegitimacy of the plaintiffs formed no objection to' their claim; but we are entirely satisfied, from an examination of the authorities, that the term
 
 “
 
 issue,” as used in the clause of the will, now-before us, means legitimate issue only, and does not embrace the plaintiffs. Most, if hot all the English cases on this subject, are collected and analysed with his usual critical acumen by Mr. Jarman, in the second volume of his valuable work on "Wills. Among these cases is included that of
 
 Wilkinson
 
 v.
 
 Adams,
 
 1 Ves. and Beame’s Eep. 460, in which the judgment was pronounced by the Lord Chancellor Eldon, assisted by Thompson, Baron, and LeBlanc and Gibbs, Judges., The result of Mr. Jarman’s examination is thus expressed : “ They (that is illegitimate children) are not objects of a gift to
 
 child/ren
 
 or
 
 issue
 
 of any other degree, unless a distinct intention to that effect be manifested upon the face of the will; and if by possibility
 
 legitímate
 
 children could have taken as a class, under such gift, illegitimate children
 
 ccmnot,
 
 though children, legitimate and illegitimate, may take concurrently under a
 
 *592
 

 designatio personarum
 
 applicable to both.” See'2 Jarman on Wills, 155.
 

 In the will, now under consideration:, there is- no- designation of persons applicable to- botli kinds of children,, and there is nothing upon the face of it, to indicate any intention, much' less a distinct intention, that illegitimate issue-was meant, and with- regard to the testator’s daughter, Nancy,, there was not only a possibility, but a strong probability, that at the time when the will was made, she might have legitimate issue to take instead of her bastard children. The word issue is used by the testator, in connection with his other daughters,, is precisely the same manner as it is with respect to his daughter, Nancy, and since, as to them, it undoubtedly means legitimate issue, it must have the same construction as to her..
 

 The testimony’ offered by the plaintiff, to show that the testator was himself a bastard, could not have aided the Court in ascertaining his meaning, and was, therefore, properly rejected as immaterial.
 

 The statute of limitations was- relied uponliy the defendant. It would, of itself, have afforded a complete defense- against the action, (if the claim of the plaintiffs bad been otherwise well founded) but for an act of Assembly, which was passed in 1852, anpl which was in force until the-first day of January, 1856-, when the Revised Code, in which it was omitted, went into operation. By that act it was provided,.
 
 “
 
 that on the trial of any suits before any of the Courts of this State, the time, during which the parties to a suit shall not have been a resident, shall not be given in evidence in support of the plea of the statute of limitations.” See Act 1852, ch. 51, sec. 2, referred to in
 
 Phillips
 
 v.
 
 Cameron,
 
 3 Jones, 390.. The defendant’s wife died in 1851, and supposing he had no title at that time-, his adverse possession of the slaves for more than three years before the suit was brought, would have given him one, but for the interposition of the act to which we have referred.. However, the defendant has no need to resort to any other defense than that which is furnished by the will of his wife’s
 
 *593
 
 father. Under that, she took an -absolute interest in the slaves, sued for, which became his
 
 j%t/re mariti.
 

 Per Curiam,
 

 Judgment affirmed.