HENRY TUCKER v. FLORA TUCKER

*Homestead— Tenant-for-life—Statute—Forfeiture—Descent.*

1. A widow who has a homestead allotted her in the lands of her deceased husband in lieu of dower is a tenant-for-life thereof, within the purview of the statutes which provide that when "a person seized * * * as tenant-for-life" shall not, within one year after sale for taxes, redeem the lands sold, shall forfeit to the person next in ti le, his or her right in the premises.

2. Persons born in slavery, of slave parents, and who were not legitimated by their parents marrying subsequent to the war, are not legitimated by the Act of 1879 (*The Code,* § 1281, Rule 13). except to the extent of inheriting from their parents.   Yet such persons have the rights of illegitimates between themselves under *The*

*Code,* § 1281, Rules 9 and 10. Hence, when there are two brothers coming under this description, and one dies leaving no issue or mother, the other brother inherits, and is the next in title. (*Tucker* v. *Bellamy,* 98 N. C., 31, and *Jones* v. *Hoggard,* at this term distinguished).

CIVIL ACTION for recovery of real estate, tried before *Graves, J.,* at April Term, 1890, of NEW HANOVER Superior Court.

The case was submitted upon facts agreed, from which it appeared that William Tucker died in 1880, seized of land in controversy, leaving the plaintiff, his only brother, leaving no children, and the defendant, his widow. By proper procedings, the premises were allotted to the widow as her homestead in lieu of dower. In 1886 she listed the land for taxes, but failing to pay the same the land was regularly sold, after due advertisement, January 7th, 1887, and was bought by one Maria Fuller, who was the adopted daughter of the defendant. The defendant failed to redeem the land, and on January 5th, 1889, the plaintiff, claiming to be the person next in title to said land, paid the tax, penalty and cost to the Clerk of New Hanover Superior Court, the same having been previously tendered by him to Maria Fuller, who declined to accept it. It is further admitted that the defendant is in possession, and that the plaintiff is a colored man, formerly a slave, as was also the husband of the defendant. Their mother and father lived as man and wife prior to 1868, and died before the abolition of slavery. Upon these facts the Court rendered judgment in favor of defendant, and plaintiff appealed.

No counsel for plaintiff.
*Mr. T. W. Strange,* for defendant.

CLARK, J : The statute (Acts 1885, ch. 177, § 59) provides that when the person "seized as tenant by curtesy or dower, as tenant-for-life, or in right of his wife," of land which is

sold for taxes thereon "shall not within one year after such sale redeem the same according to law, such person shall forfeit to the person or persons next in title to such lands in remainder or reversion" his estate in said land, and that such person next in title may redeem it within one year after forfeiture. This section is re-enacted *verbatim* in Acts 1887, ch. 137, § 121.

The allotment of the premises to the defendant as her homestead by virtue of the Constitution, Art. 10, § 5, was an extension and prolongation of the seizin and homestead right of her husband "during her widowhood." For that period she held it, was "tenant" or "holder" of it, protected against sale of it for his debts, and with the right to enjoy the "rents and profits," indeed, in this respect she enjoys the homestead more fully than her deceased husband could have done, for the rents and profits cannot be subjected to payment of his debts, as would be the case if he were living (*Bank* v. *Green*, 78 N. C., 247), but "enure to her benefit." Such right of occupancy of the premises, with the absolute right to the rents and profits during widowhood, while technically not in all respects a tenancy for life (*Jones* v. *Britton*, 102 N. C., 166), is at least such within the purview and meaning of this statute. 2 Bl., 131. It cannot be that the premises are exempt from taxation during her occupancy, since the Constitution expressly provides that the homestead is subject to sale for taxes. Art. 10, § 2. Nor can it be thought that the fee is subject to sale for non-payment of taxes by the widow. Macay, *ex parte*, 84 N. C., 63. Indeed, the statute above cited (sec. 42) provides that the Sheriff's deed shall convey only the estate which the *delinquent* had in the land. It is not a reasonable construction of the statute that the remainder-man should be held to payment of the taxes for the indefinite period of the life of the widow, who meantime enjoys the rents and profits, under penalty of losing his ultimate right to the fee. The reasonable and just construction is

that the widow, who possesses the premises and enjoys the rents and profits thereof "during widowhood," comes within the class of "tenants for life" designated by the statute, and when she permitted her interest to be sold for non-payment of taxes and failed to redeem, instead of the premises going out of the family, the law permitted the remainderman, the "next in title," to redeem it, as he elected to do, within the prescribed time.

The defendant, therefore, comes within the words of the statute and was subject to forfeiture of her estate by permitting the land to be sold for taxes and failing to redeem it.

It is, however, contended that the plaintiff was not "the next in title," citing *Tucker* v. *Bellamy,* 98 N. C., 31, and *Jones* v. *Hoggard,* at this term. *The Code,* § 1281, Rule 13, legitimating the children born prior to 1868 of colored parents who lived together as man and wife, confers the right of inheriting upon the children only as to their parents' estates, and not collaterally. Prior to that act, such children had only the rights of other illegitimates, and, by section 1281, Rules 9 and 10, could only inherit from their mother, when there was no legitimate child, and from one another. The Act of 1879, *The Code,* § 1281, Rule 13, did not abridge the rights given by Rules 9 and 10, but extended them by conferring upon parties designated therein the right of succeeding to the father and also to the mother in all cases. It follows, therefore, that the husband of the defendant and the plaintiff were, in the eye of the law, as to each other, vested with the rights of illegitimates, and, upon the death of William Tucker, the estate descended to the plaintiff, subject to the dower and homestead rights of the widow.

This case differs from the two cases above cited. In *Tucker* v. *Bellamy, supra,* the Court held that the Act of 1879. Rule 13, *supra,* did not authorize the children legitimated by it "to inherit from collateral kindred, such as uncles and aunts." It may be noted that this did not conflict with Rule 10, for,

though that rule allows illegitimate children to be legitimate as between themselves and their representatives, this contemplates that such representatives shall be themselves legitimate representatives of the illegitimate child. In *Tucker* v. *Bellamy*, the plaintiffs were the illegitimate representatives (being born in slavery) of the illegitimate brother who died in slavery when incapable of inheriting, and, therefore, the estate of the aunt could not pass to them unless authorized by Rule 13, which, the Court held, conferred no rights to inherit upon collaterals. Rule 13 made them legitimate, it is true, as to their father's estate, but they did not claim the estate of their father, but of their aunt. In the present case, by virtue of emancipation and the Constitution, the plaintiff has the same civil rights as any other illegitimate, and, under Rule 10, can succeed to the estate of his illegitimate brother. Rule 13 has no application to this case.

*Jones* v. *Hoggard*, at this term, is also materially different. In that case the decedent left a legitimate brother, who was the defendant, and several illegitimate brothers and sisters, the plaintiffs, who were only legitimated by Rule 13. The Court held that this last Rule only conferred the right of inheriting from the parents and not from the brother. The decedent and the defendant in that case being legitimate brothers, Rule 10 did not apply to plaintiffs as here. In the present case the plaintiff and his brother were, of necessity, either legitimates or illegitimates. If legitimates, then the plaintiff was, of course, next in title; if illegitimates, there being no legitimate brother or sister, the plaintiff was equally next in title.

Error.